IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



| | |
|---|---|
| *IN RE* APPLICATION OF CAMERON FINDLAY FOR AN ORDER UNDER 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Misc. Civil Action No. 23MC5 |

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Applicant Cameron Findlay ("Applicant") submits this memorandum of law in support of his application for an order under 28 U.S.C. § 1782(a) to obtain discovery from Nicholas Del Rosso and Vital Management Services Inc. ("Vital") (collectively, "Respondents") for use in foreign proceedings.

### PRELIMINARY STATEMENT

Applicant brings this action pursuant to 18 U.S.C. § 1782(a) for an order authorizing Applicant to issue two subpoenas: (1) a subpoena for documents and testimony to Respondent Del Rosso; and (2) a subpoena for documents to Respondent Vital. As set forth below, Applicant satisfies all of the statutory and discretionary § 1782 factors, and respectfully submits that his application should be granted.

Applicant is a citizen of the United Kingdom. In 2018, Applicant was the victim of a series of phishing[1] and spear-phishing[2] electronic attacks, which Applicant believes were attempts to steal confidential and proprietary information from him.

At the time of the attacks, Applicant was involved as a key witness in an English court proceeding. The proceeding had been brought by Eurasian Natural Resources Limited ("ENRC") against its former lawyers, the firm Dechert LLP ("Dechert") and Neil Gerrard, a solicitor and former partner of Dechert (the "Dechert Proceedings"). The Dechert Proceedings involved allegations that Dechert and Gerrard engaged in highly improper conduct while retained by ENRC, including allegations that Gerrard deliberately leaked ENRC's confidential and privileged material to the press, made highly prejudicial and unauthorized disclosures about ENRC to UK government officials, and secretly facilitated an ENRC employee's approach to UK government officials as a whistleblower.

Applicant ultimately provided witness statements and three days of in-court testimony showing that he and another ENRC consultant were instructed by Gerrard to leak confidential information about ENRC to a national newspaper. The English court comprehensively upheld ENRC's claims in the Dechert Proceedings.

Applicant now possesses information suggesting that Gerrard was responsible for the hacking attacks against him. At least three lawsuits have been filed against Gerrard and Dechert accusing them of similar hacking, phishing, and spear-phishing attacks. And, at

---

[1] Phishing is the term used for the sending of malicious emails or text messages designed to trick the recipient into clicking on a link to a website containing malicious software.
[2] Spear-phishing involves the use, in the malicious emails or texts, of information *specific to the recipient* which is intended to increase the likelihood of deceiving the recipient.

the time of those attacks, the plaintiffs in each of those lawsuits were situated just like Applicant in 2018 -- opposing Gerrard or his clients.

Furthermore, counsel for one of the plaintiffs bringing a lawsuit against Gerrard and Dechert has reached out to Applicant's English counsel to inform him that information concerning Applicant is included in a batch of data that appears to be copies of malware and malicious spear-phishing emails. Applicant's understanding is that this data was provided by a whistleblower at CyberRoot Risk Advisory Private Limited ("CyberRoot"). CyberRoot is an Indian firm that evidence suggests was engaged by Respondents and has been connected, through bank statements and witness evidence, to hacking work on behalf of Gerrard and Dechert's clients.

Applicant intends to file proceedings in English court against Gerrard and Dechert for directing and coordinating the hacking campaign against him ("Foreign Proceedings"). It is Applicant's belief, based on the evidence currently available, that Respondents played key roles in orchestrating the hacking campaign against him. Applicant accordingly makes this application pursuant to 18 U.S.C. § 1782(a) to obtain testimony and documents from Respondents central to Applicant's Foreign Proceedings. Respondents reside in this district, have knowledge that bears directly on Applicant's contemplated claims, and in responding to the subpoenas would provide testimony and documents that could be used in English courts. Further, Respondents are not anticipated to be parties to the Foreign Proceedings, this discovery application does not circumvent foreign proof-gathering restrictions, and the discovery sought is not unduly intrusive or burdensome.

## STATEMENT OF RELEVANT FACTS[3]

### A. The Parties

Applicant is a citizen of the United Kingdom. Meyer Decl. ¶ 1.2. He began his career with the Metropolitan Police in London. *Id.* He then worked as a business and security consultant specializing in corporate investigations and asset tracing, before co-founding a music technology company in England. *Id.*

Respondent Vital is a company that purports to provide investigative services, located in Chapel Hill, North Carolina. *Id.* ¶ 2.2. Respondent Del Rosso is the president, owner, and sole employee of Vital. *Id.* He resides in Chapel Hill, North Carolina. *Id.*

### B. Relevant Non-Parties

ENRC is a holding company in a diversified natural resources group with extensive mining operations. *Id.* ¶ 2.3 It is incorporated in England & Wales. *Id.*

Dechert is a an international law firm with offices in the UK. Neil Gerrard is a solicitor and former partner at Dechert. *Id.* Dechert and Gerrard were engaged by ENRC between April 2011 and March 2013 to conduct certain internal investigations and subsequently to advise ENRC on its engagement with the UK's Serious Fraud Office. *Id.* ¶ 3.1.

### C. ENRC's UK Litigation Against Dechert and Gerrard

In 2017, ENRC instituted proceedings against its former lawyers, Dechert and Gerrard (the "Dechert Proceedings"). *Id.* ¶ 2.3. The case proceeded to trial, and was heard

---

[3] The facts upon which the Application is based are set forth more fully in the February 24, 2023 Declaration of James Meyer ("Meyer Decl."), and the exhibits thereto.

-4-

by a judge in English High Court over 11 weeks between May and September 2021. *Id.* Findlay gave evidence at the trial, on behalf of ENRC, over the course of three days. *Id.*

Specifically, the Dechert Proceedings alleged that, between April 2011 and March 2013, Gerrard and Dechert were involved in highly improper conduct, including leaking ENRC's confidential and privileged material to the national press on at least three occasions; making repeated secret adverse and highly prejudicial disclosures about ENRC to officers of the UK's Serious Fraud Office, including at clandestine meetings; and secretly facilitating an approach to the UK's Serious Fraud Office by a senior ENRC compliance officer as a whistleblower. *Id.* ¶ 3.2.

Applicant's former firm, Canani Capital Management AG, which traded as Bridge 2 Limited ("Bridge 2"), had been engaged by ENRC to provide consulting services during a period that included April 2011 to July 2012. *Id.* at ¶ 3.1. In this role, Bridge 2 took day-to-day instructions from Dechert. *Id.* Applicant worked closely with Gerrard during this time. *Id.*

During the litigation, ENRC relied on witness statements from and trial testimony by Applicant, showing that he and another ENRC consultant were recruited and used by Gerrard to leak ENRC's confidential and privileged information to *The Times* newspaper in the summer of 2011 ("*The Times* Leak"). *Id.* ¶ 3.3. The English Court issued its judgment in the Dechert Proceedings in May 2022, comprehensively upholding ENRC's claims against Gerrard. *Id.* ¶ 3.4. The court made findings against Gerrard of "extraordinary" and "almost unimaginable" misconduct, including that he had perpetrated *The Times* Leak (and later two other leaks) and that he gave wrong advice to ENRC purposefully to keep his

retainer going "by scaremongering." *Id.* The court also held that Gerrard had "lied continuously" in an attempt to cover up his wrongdoing. *Id.*

### D. Applicant Is the Subject of Multiple Hacking Attempts and Threatening Behavior in 2018

Between April 11, 2018 and June 21, 2018, Applicant estimates he was targeted with at least 90 spear-phishing emails sent to his business email address. *Id.* at ¶ 4.1. Applicant believes these spear-phishing emails were sent at Gerrard's instruction and/or involvement in an attempt to: (a) find out what evidence Applicant had against Gerrard to support *The* Times Leak allegation (and what he had told ENRC); and (b) intimidate Applicant into withdrawing his written statements to the English Court about this issue. *Id.* ¶ 4.2. The basis of this belief is explained in detail the Meyer Declaration at ¶¶ 4.4-4.5. In brief, the timing of the attacks began shortly after ENRC's solicitors informed Gerrard's solicitors that "significant evidence ha[d] come to light" establishing that Gerrard had instigated the Times leak, *id.* ¶ 4.4(e)-(f), and ended shortly after Gerrard's solicitors threatened Applicant to withdraw his statement, *id.* ¶ 4.4(i)-(j). And the attacks contained material designed to elevate the appeared seriousness of the communications in an effort to threaten or intimidate Applicant. *Id.* ¶ 4.5.

Applicant believes he clicked on at least one link in the first spear-phishing request because he did not recognize it as malicious. *Id.* ¶ 4.6. Applicant believes that he was able to recognize that most of the spear-phishing emails were not genuine, however, given how sophisticated the hacking campaign appears to have been, he is unable to say for certain that he did not click on any other links. *Id.* These hacking attempts, combined with the

-6-

Case 1:23-mc-00005-UA-JLW   Document 2   Filed 02/24/23   Page 6 of 17

intimidating correspondence from Gerrard's solicitors, referenced *supra*, caused Applicant and his family significant stress and anxiety. *Id.*

In addition to the spear-phishing emails, Applicant believes his home was covertly surveyed on several occasions by individual operatives, one of whom appeared to be filming his house. *Id.* ¶ 4.7. Having received covert surveillance training in his role as a police officer, Applicant is capable of identifying this type of behavior. *Id.* These events led him to believe that his and his family's security was at risk and caused considerable distress to his wife and young daughter. *Id.* Because of these incidents, Applicant installed CCTV cameras in his home, Applicant and his wife both received therapy, Applicant was referred to a specialist therapist and prescribed anti-depressants, and Applicant was asked by colleagues to step away from the day-to-day management of the company he ran at the time. *Id.* ¶ 4.8.

### E. Gerrard, Dechert, Del Rosso, and Vital Are Implicated in Other Hacking Attempts

Although Applicant long suspected the spear-phishing emails were sent at Gerrard's instruction, he did not want to pursue claims against Gerrard without further evidence. *Id.* ¶ 5.1. It is now a matter of public record, however, as a result of highly publicized proceedings in both England and the United States, that Gerrard has been implicated in multiple other hacking attempts targeting his and his client's opponents. *Id.* ¶ 5.2.

In 2016, Farhad Azima, a U.S. businessman, instituted proceedings against Gerrard and Dechert alleging, among other things, that Azima and others associated with him were targeted with over 150 spear-phishing emails in mid-2015. *Id.* at ¶¶ 5.7-5.9. Over a year later, in late summer 2016, 30GB of Mr. Azima's hacked confidential and/or private data

Case 1:23-mc-00005-UA-JLW Document 2 Filed 02/24/23 Page 7 of 17

was posted online. *Id.* ¶ 5.9. Azima alleges that Respondents, instructed by Gerrard and Dechert, orchestrated a spear-phishing attack to implicate Azima in the alleged misappropriation scheme of a colleague. *Id.* Azima has also brought proceedings against Respondents in this Court with respect to this spear-phishing attack. *Id.* ¶ 5.11.[4]

In 2020, Karam Al Sadeq, the former general counsel for one of Dechert's clients, likewise initiated proceedings against Gerrard and Dechert. *Id.* ¶¶ 5.6-5.7. Al Sadeq similarly alleged that he was targeted by hacking, phishing, and spear-phishing attacks authorized by or coordinated with the assistance of Gerrard and Dechert. *Id.* ¶ 5.6.

And, in 2021, Stokoe Partnership Solicitors ("Stokoe"), who represented Al Sadeq in his proceedings against Gerrard and Dechert, brought suit against Gerrard and Dechert (the "Stokoe Proceedings"). *Id.* ¶¶ 5.7, 5.13. Stokoe alleges that hacking attacks against it in 2020 formed part of a wider campaign by Gerrard and Dechert, assisted by the Respondents, to improperly obtain confidential information relating to Mr. Al Sadeq's source of funding for his lawsuit. *Id.* ¶ 5.13. In February, 2021, Al Sadeq and Stokoe applied to this Court pursuant to 28 U.S.C § 1782 for an order against the Respondents to conduct discovery for use in the Stokoe Proceedings. *In re Application of Karim Salah Al Sadeq and Stokoe Partnership Solicitors for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, Case No. 1:21-mc-00006-WO-LPA. Meyer Decl. ¶ 5.14. The application was granted in October, 2021, *see* 2021 WL 4844754, and the subsequent motion to quash filed by Del Rosso and Vital was denied in March, 2022,

---

[4] M.D.N.C. Civil Case No. 1:20-cv-00954-WO-JLW.

*see* 2022 WL 825505. Mr. Del Rosso and Vital filed an objection, and that objection is currently pending before U.S. District Court Judge William J. Osteen, Jr. Meyer Decl. ¶ 5.14.

F. <u>Applicant Receives Evidence He Was the Target of Phishing Hacks</u>

On February 23, 2023, the English law firm representing Applicant, Egan Meyer, received a letter from English solicitors acting for Azima, Burlingtons LLP, addressed to Applicant. *Id.* at ¶ 5.16. The letter informs Applicant of "matters that have come to light in the course of [Mr Azima's] investigations into the Indian 'hack for hire' firm, CyberRoot Risk Advisory Private Limited." Meyer Decl. Ex. 11. The letter explains that Athena Intelligence, a corporate investigations firm Azima hired with respect to his proceedings against Gerrard and Dechert, received anonymous data on November 2022 which appears to have been from a whistle-blower at CyberRoot. *Id.* CyberRoot is an Indian firm that Azima, in his proceeding against Gerrard and Dechert, alleges was engaged by Respondent Vital to carry out hacking work. Meyer Decl. ¶ 5.9(a). The Cyberoot whistleblower data received by Athena Intelligence shows that Applicant was also a target of phishing hacks instigated by CyberRoot: messages prepared addressed to Applicant's email address, cameron@powerchord.co.uk, appear within the data provided to Athena. *Id.* ¶ 5.16(d).

G. <u>Applicant Intends to Bring Foreign Proceedings Against Gerrard and Dechert</u>

As a result of the development discussed above, Applicant intends to institute proceedings against Gerrard and Dechert. *Id.* ¶ 6.1. Applicant intends to bring a harassment claim against Gerrard and Dechert founded on, among other things, the anxiety and distress caused to him and his family by the hacking campaign. He is still exploring potential

-9-

Case 1:23-mc-00005-UA-JLW Document 2 Filed 02/24/23 Page 9 of 17

additional claims against Gerrard and Dechert. *Id.* ¶ 6.2. Applicant is also contemplating pursuing criminal complaints in the appropriate foreign jurisdictions. *Id.* at ¶ 6.3.

Respondents are alleged, acting on Mr. Gerrard's instructions, to have played key roles in orchestrating the hacking, phishing, and/or spear-phishing attacks targeting the opponents of Gerrard and his clients, including Applicant. It is Applicant's reasonable belief that Respondents have documents and information that would constitute significant relevant evidence in the Foreign Proceedings, particularly with regard to the following key issues: (a) the extent of the Respondents' involvement in the sending of the spear-phishing Emails; (b) who the Respondents received their instructions from; and (c) the motivation for sending the spear-phishing Emails.

## ARGUMENT

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceedings in a foreign or international tribunal." The purpose of Section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 reflects "the twin aims of . . . providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) (citing *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir.1992)), *aff'd*, 542 U.S. 241 (2004). The statute "reflects a long-term — over 150-year — policy of Congress to facilitate cooperation with foreign countries by

'provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals.'" *Servotronics, Inc. v. Boeing Co.*, 954 F.3d 209, 212–13 (4th Cir. 2020) (quoting *Intel*, 542 U.S. at 247).[5]

Applicant satisfies all statutory and discretionary factors. Accordingly, discovery should be authorized.

### A. Applicant Satisfies All Three Statutory Factors

Under well-settled law, discovery pursuant to § 1782 is appropriate and should be authorized where three statutory factors are met and where a series of four discretionary factors set forth in *Intel* also support discovery. The statutory factors are: "(1) the person from whom discovery is sought resides or is found in the district where the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or an interested person." *In re Application of Purolite for an Order Pursuant To 28 U.S.C. § 1782 To Conduct Discovery for Use in A Foreign Proceeding*, 2016 WL 1294772, at *2 (D. S.C. 2016) (internal citations omitted). All three factors are met here.

#### i. The Respondents Are All Found Within This District

Respondents Del Rosso and Vital are located in this district. Respondent Del Rosso resides in Chapel Hill, North Carolina. Meyer Decl. ¶ 2.2. Respondent Vital is located at

---

[5] Findlay submits this Application *ex parte* as that is a standard manner in which § 1782 applications are commenced. *See, e.g., Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte.")

-11-

1340 Environ Way, Chapel Hill, North Carolina 27517. *Id.* As such, Respondents are found within this district.

### ii. The Discovery Sought Is "For Use" in a Foreign Proceeding

The requested discovery is for use in a foreign proceeding, in Applicant's contemplated actions against Mr. Gerrard and Dechert in the English Courts. The "Supreme Court [has] held that section 1782(a) requires only that a proceeding 'be within reasonable contemplation.'" *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (quoting *Intel*, 542 U.S. at 259). A proceeding is within reasonable contemplation if there are "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 692 (D.C. Cir. 1989). Solicitor James Meyer avers that Applicant intends to issue proceedings against Gerrard and Dechert in the English court. *See* Meyer Decl. ¶¶ 2.4, 6.1-6.4 This satisfies the requirement that the proceeding be within reasonable contemplation. *See In re King*, 2021 WL 722850 (N.D. Ill. 2021) (finding "for use" requirement satisfied when U.K. solicitor "aver[ed] that the applicants anticipate initiating a proceeding as claimants in the in the High Court of England and Wales in London, England").

Courts have taken an expansive view of the "for use" requirement of Section 1782, and have emphasized that "an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015). Further, courts in this circuit have found that where the

discovery sought is for use in a foreign litigation, that is sufficient to satisfy this requirement. *See e.g., Purolite*, 2016 WL 1294772, at *2 (applicant "seeks the discovery 'for use in a proceeding before a foreign tribunal' because the requested discovery is for use in Purolite AG v. Hitachi-GE Nuclear Energy, Ltd., a matter currently pending in the Tokyo District Court in Tokyo, Japan."); *Oncology Found. v. Avanza Dev. Servs., LLC*, 2017 WL 2376769, at *1 (D. Md. 2017) (granting application where discovery was sought for use in proceedings before the European Patent Office). Applicant seeks discovery for use in his reasonably contemplated proceedings in English courts. As such, the discovery sought is "for use" in aid of foreign proceedings.

### iii. The Discovery is Sought by an "Interested Party"

The Supreme Court has held that there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782". *Intel*, 542 U.S. at 256. Applicant will be the claimant in his actions against Gerrard and Dechert in the English claim. Accordingly, Applicant is an interested party for purposes of Section 1782.

## B. All Four *Intel* Discretionary Factors Support Discovery

"Section 1782 affords the district courts 'wide discretion' in responding to requests for assistance in proceedings before foreign tribunals." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (internal quotations and citations omitted). In determining how to exercise this discretion, a court "should be guided by the statute's 'twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our

-13-

courts.'" *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) (citing *Malev*, 964 F.2d at 100.

Courts examine four discretionary factors in their analysis of a Section 1782 application: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the proposed discovery requests are "unduly intrusive or burdensome." *In re P.T.C. Prod. & Trading Co.*, AG, 2020 WL 7318100, at *2 (W.D.N.C. 2020) (citing *Intel*, 542 U.S. at 264–65).

### i. Respondents Are Not Parties in the Foreign Litigation

Respondents are not anticipated to be parties in Applicant's Foreign Proceedings. Where the Respondent is not a party to the foreign proceeding, this factor weighs in favor of granting the application. *See Intel*, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *In re Petition of Newbrook Shipping Corp*, 2020 WL 6451939, at *6 (D. Md. 2020) ("Here, neither GMS nor Sharma is a party to the South African Action, which weighs in favor of granting judicial assistance.").

Further, the English courts cannot compel testimony from nonparties, such as Del Rosso and Vital, located outside the United Kingdom. Respondents are not anticipated to

-14-

be participants in the English action and are located in the U.S. This factor accordingly weighs strongly in favor of allowing Applicant to obtain the limited discovery it seeks from Respondents through this Application.

### ii. The English Courts Are Receptive to Federal Court Assistance Via Section 1782

It is well-settled that the English courts are receptive to discovery obtained through Section 1782 proceedings. *See In re Nat'l Bank Tr.*, 2021 WL 118531, at *3 (D. Conn. 2021) ("[Movant] has not found, nor is the Court aware of, any authority to suggest that the English court would be unwilling to accept discovery under § 1782[.]"); *Matter of Simetra Glob. Assets Ltd. & Richcroft Investments Ltd.*, 2016 WL 3018692, at *4 (D. N.J. 2016) ("[T]here is no indication that the English Court would reject the evidence that Petitioners seek to elicit[.]"); *In re Ex Parte Application of Glob. Energy Horizons*, 2015 WL 1325758, at *2 (N.D. Cal.) ("There is no authority suggesting the English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena."); *Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 197 (S.D. Tex. 1995) (noting that "a decision of England's highest judicial body[ ] expressly approved a private litigant's use of section 1782 to gather evidence in the United States for use in English proceedings"). Indeed, the Supreme Court noted expressly in *Intel* that England's highest judicial authority, the House of Lords, has already "ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782." *Intel*, 542 U.S. at 261–62 (citing *S. Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien"*

*N.V.*, [1987] 1 App. Cas. 24). These holdings are consistent with the Meyer Declaration. *See* Meyer Decl. ¶ 6.5.

Since the English court, which would preside over the Foreign Proceedings, is receptive to federal court assistance, this factor weighs in favor of granting the Application.

        iii.    <u>This Application Does Not Circumvent Foreign Proof-Gathering Restrictions</u>

Nothing in the Application would circumvent any proof-gathering restriction of the English courts. *Id.* The "circumvention" discretionary factor under *Intel* "entails neither a discoverability requirement nor a quasi-exhaustion requirement . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 819 (D. Md. 2020) (internal citations and quotation marks omitted). Rather, "[i]n determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the issue is whether the discovery is being sought in bad faith." *In re Chevron Corp.*, 2010 WL 4883111, at *3 (W.D. Va. 2010) (citations omitted). Applicant is seeking discovery of fact witnesses who reside in this District and who possess knowledge relevant to its claims — evidence that Applicant does not have access to through the English courts. There is no evidence of bad faith on Applicant's part. Therefore, this factor also weighs in favor of granting the Application.

        iv.    <u>The Request Is Not Unduly Intrusive or Burdensome</u>

"Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for

Case 1:23-mc-00005-UA-JLW   Document 2   Filed 02/24/23   Page 16 of 17

irrelevant information." *Newbrook Shipping Corp.*, 2020 WL 6451939, at *7 (internal citations omitted).

Applicant seeks to take Del Rosso's deposition and to subpoena Del Rosso and Vital for narrowly-tailored discovery. The deposition would focus on topics concerning Del Rosso's involvement in the sending of spear-phishing emails to Applicant. And the documents requested concern related communications and payments received by Respondents from Dechert or Gerrard for a limited time period. *See* Application Exs. A and B. Thus, Applicant's request is neither unduly intrusive or burdensome.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Mr. Findlay's Application and authorize issuance of the subpoenas to Mr. Del Rosso and Vital.

This the 24th day of February, 2023.

_____
Clay C. Wheeler
State Bar No. 38713
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7333
cwheeler@kilpatricktownsend.com

*Attorney for Applicant Cameron Findlay*